OPINION
Defendant-appellant Leonard DeMattio, Sr. (hereinafter "husband") appeals the July 1, 1999 Judgment Entry of the Tuscarawas County Court of Common Pleas which adopted, with modifications, the Magistrate's April 5, 1999 Decision and overruled his objections to said decision. Plaintiff-appellee is Shirley DeMattio (hereinafter "wife").
 STATEMENT OF THE FACTS AND CASE
Husband and wife were married on June 18, 1960, in Dennison, Ohio. Four children were born as issue of said marriage, three of those children are now emancipated, the other child died at an early age. On May 1, 1997, wife filed a complaint for divorce in the Tuscarawas County Court of Common Pleas, Domestic Relations Division, after learning husband had been engaged in an adulterous affair for approximately one and one half years. On May 9, 1997, the magistrate awarded wife exclusive use of the marital residence. Husband filed a timely answer and counterclaim for divorce. Via Magistrate's Order filed May 19, 1997, the magistrate ordered husband to pay wife temporary spousal support in the amount of $200/month, effective May 1, 1997. On August 26, 1997, wife filed a Motion to Increase Spousal Support due to a hospitalization and to a strike at United Parcel Service, her employer, both of which resulted in her being unable to work. The magistrate conducted an oral hearing on the motion on October 6, 1997. Via Magistrate's Order filed November 12, 1997, the magistrate increased wife's spousal support award to $500/month, effective November 1, 1997. Husband filed a Motion to Terminate Spousal Support and/or Modify Same on December 23, 1997, alleging wife had returned to her employment at United Parcel Service on November 1, 1997. After an oral hearing on husband's motion, the magistrate denied the same on January 14, 1998. Wife filed a second motion to increase spousal support on October 7, 1998, claiming the increase was necessary as her medical condition rendered her unable to work. Wife explained, on October 5, 1998, her employer instructed her to leave work and report to Dr. Patel, her psychiatrist. Dr. Patel placed wife on medical leave until November 9, 1998. The magistrate ordered wife to undergo a psychiatric examination with a court appointed psychiatrist, Dr. Zaidi. Via Magistrate's Order filed December 22, 1998, the magistrate ordered wife's temporary spousal support be increased to $1,000/month, effective October 15, 1998. Shortly thereafter, husband filed a motion to vacate. After conducting an oral hearing, the trial court granted husband's motion via Judgment Entry filed February 22, 1999. The matter came on for final hearing on the merits of the underlying divorce on April 10, 1998, June 11, 1998, August 31, 1998, and September 9, 1998. The magistrate issued his Findings of Fact and Conclusions of Law on April 5, 1999. Relative to the employment and earnings of each party, the magistrate found husband, who was employed with Gradall, in New Philadelphia, Ohio, and had been throughout most of the parties' marriage, consistently earning approximately $50,000/year, including overtime. The magistrate found wife, who had stayed at home to care for the minor children throughout the early years of marriage, was employed on a part-time basis as a counter clerk at United Parcel Service in New Philadelphia. Wife's highest earnings from that position were $27,624.39/year. Relative to the parties' real property, the magistrate found husband and wife owned three parcels of real property, two are undeveloped tracks of land while the third is a one acre lot upon which the marital residence is situated. The magistrate found the total value of all the real property, including the marital residence, to be $76,000. The magistrate also found a mortgage existed on the marital premises in the amount of $18,000(+)(-). As to the parties' personal property, the magistrate found the parties owned a 1991 Chevy S10 pick-up, which had been in the husband's possession throughout the separation; a 1990 Pontiac Bonneville, which was in the wife's possession; two 1965 Corvettes, one which was disassembled and in boxes; and a 1986 Corvette. The magistrate found the total cumulative value of the pick-up and the three Corvettes to be $32,000. The magistrate valued the Pontiac at $4,000. Additionally, husband and wife each had retirement plans, and husband would receive $652.30/month at retirement while wife would receive $704/month upon her retirement. Based upon the foregoing findings, the magistrate recommended wife should be granted a divorce on the grounds of adultery. Having found the total value of the real property to be $76,000 less an $18,000 mortgage, the magistrate calculated husband's marital interest in said property to be $28,000. The magistrate recommended husband quit claim his interest in the real property to wife, thus awarding her all of the real property. In light of said award, the magistrate recommended husband be awarded all the vehicles, except for the Pontiac. The magistrate further recommended each party retain his or her pension benefits without claim of the other party as the values of the benefits were similar. Finally, with respect to spousal support, the magistrate noted the length of the marriage, wife's need for spousal support, wife's medical condition, husband's infidelity, and the causal connection between husband's actions and wife's illness and current inability to support herself, and recommended husband be ordered to pay support in the amount of $800/month, commencing on April 1, 1999. Husband filed timely objections to the Magistrate's Decision. Relevant to this appeal, husband objected to the magistrate's finding an $18,000(+)(-) mortgage remained on the marital property. Husband attached a computer printout from the Dover-Phila Credit Union, which indicated only a $13,629.67 balance remained. Husband also objected to the magistrate's ordering him to quit claim his interest in the marital real property to wife, and awarding said property to wife. Husband maintained his being awarded the pick-up and the three Corvettes while wife was awarded the real property did not constitute an equitable and fair division of the parties' assets. Husband further objected to the amount of the spousal support award, contending the magistrate failed to take into account wife's disability payments and workers' compensation benefits. The trial court conducted an oral hearing on husband's objections on June 14, 1999, and determined husband's objections to be meritless and overruled the same. Via Judgment Entry filed July 1, 1999, the trial court approved and adopted the Magistrate's Decision with one minor modification. The trial court found the mortgage balance on the marital property to be $13,629.67, and not the $18,000 figure found by the magistrate. The trial court granted wife a divorce from husband and declared the marital relationship to be terminated effective with the journalization of the judgment entry. It is from this judgment entry husband appeals, raising the following assignments of error:
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN SUSTAINING THE MAGISTRATE'S DECISION OF APRIL 5, 1999 AS IT AFFECTED THE ISSUES OF SPOUSAL SUPPORT, PROPERTY DIVISION AS SAME WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND COULD NOT SUPPORT THE JUDGMENT RENDERED.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND ABUSED ITS DISCRETION BY FAILING TO EQUITABLY DIVIDE THE PARTIES' MARITAL ASSETS AND DEBTS AS REQUIRED BY OHIO REVISED CODE 3105.17.1 AND BY FAILING TO FAIRLY AND ACCURATELY DETERMINE AND APPORTION THE MARITAL DEBTS AND RESULTING EQUITIES.
III. THE TRIAL COURT'S AWARD OF SPOUSAL SUPPORT TO APPELLEE, BOTH TEMPORARY AND PERMANENT[,] WAS AN ABUSE OF DISCRETION.
Any other facts relevant to our discussion of husband's assignments of error shall be contained therein.
 I, III
Because a portion of husband's first assignment of error and his third assignment of error are interrelated, we shall address said assignments of error together. In his first assignment of error, husband maintains the trial court erred in approving and adopting the Magistrate's April 5, 1999 Decision relative to the issues of spousal support and property division because the magistrate's decision was against the manifest weight of the evidence, and did not support the judgment rendered. In his third assignment of error, husband contends the trial court abused its discretion in awarding spousal support, both temporary and permanent. We shall address the issue of spousal support first. As a general matter, we review the overall appropriateness of the trial court's award of spousal support under an abuse of discretion standard. Cherry v. Cherry (1981), 66 Ohio St.2d 348. However, R.C. 3105.18(C)(1) mandates that the trial court consider certain factors in making its determination of spousal support. We find our review of the trial court's findings regarding these factors is a mixed question of law and fact and must be supported by sufficient, credible evidence. After the trial court has considered the factors, the actual determination of whether or not to award spousal support as well as the amount and duration of the spousal support award may be properly reviewed under the more deferential abuse of discretion standard. In order to find an abuse of discretion, we must determine whether the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Pursuant to R.C. 3105.18(C)(1), trial courts are to consider certain factors in making determinations of spousal support: (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
(a) The income of the parties, from all sources * * *;
(b) The relative earning abilities of the parties;
(c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because he will be custodial of a minor child of the marriage, to seek employment outside the home;
(g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
(I) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
(l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
(n) Any other factor that the court expressly finds to be relevant and equitable.
Further, trial courts are governed by the standards and guidelines imposed by the Ohio Supreme Court in Kunkle v. Kunkle (1990),51 Ohio St.3d 64, paragraph one of the syllabus: Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.
In his Brief to this Court, husband focuses his argument on the magistrate's findings relative to his yearly income and wife's psychological illness. With respect to the magistrate's finding husband consistently earned $50,000/year, we note husband did not object to this finding before the trial court. Pursuant to Civ.R. 53(E)(3), husband cannot assign as error on appeal any finding or conclusion to which he failed to object before the trial court. Therefore, we need not address his argument relative to this finding. With respect to the magistrate's findings relative to wife's depression, husband contends the evidence established wife had a history of depression dating well before the divorce proceeding and was dramatizing the situation to suit her current needs. Husband maintains the magistrate became transfixed on wife's depression and husband's extramarital affair in determining his award of spousal support. We disagree with husband's assertion and find the evidence presented was sufficient to support the magistrate's recommendation. Wife presented evidence which demonstrated her inability to maintain employment was due to physical, mental, and emotional problems. The testimony of wife's treating physician revealed a causal connection between the breakup of the parties' marriage and wife's psychological condition. Accordingly, we find the magistrate's findings relative to spousal support were not against the manifest weight. Having so determined, we find trial court did not err in sustaining the magistrate's recommendation and did not abuse its discretion in its award of spousal support. Husband's first assignment of error as to the issue of spousal support and his third assignment of error are overruled. We now turn to husband's assertion the trial court erred in sustaining the magistrate's decision relative to the issue of the property division. We review the overall appropriateness of the trial court's property division under an abuse of discretion standard. Cherry v. Cherry, supra. With the enactment of R.C. 3105.17.1, the characterization of property as separate or marital becomes a mixed question of law and fact, not discretionary, and the characterization must be supported by sufficient, credible evidence. See, McCoy v. McCoy (1995),105 Ohio App.3d 651, 654; Kelly v. Kelly (1996), 111 Ohio App.3d 641. Once the characterization has been made, the actual distribution of the asset may be properly reviewed under the more deferential abuse of discretion standard. R.C. 3105.17.1(D); Blakemore v. Blakemore, supra. Husband specifically takes issue with the magistrate's finding the cumulative value of the vehicles awarded to him to be $32,000, arguing such finding was based upon pure speculation and not upon appraisals. At the hearing, husband testified the 1991 Chevy S10 pick-up had a value of $2,000 and no money was owed on the vehicle. During his deposition, husband valued the pick-up at $3,000. Husband stated he paid $14,000 for the 1986 Corvette and owed approximately $10,000 on the vehicle. As to the two 1965 Corvettes, husband testified the two vehicles were equipped equally. Regarding the restored 1965 Corvette, the testimony revealed the parties had paid $9,000 for this vehicle and invested over $8,000 in restoring it. Husband stated the other 1965 Corvette had no value because it was disassembled in boxes at his brother's house. Based upon this testimony, we find the magistrate's finding the cumulative total of the vehicles to be $32,000 was not against the manifest weight of the evidence. We calculate the $32,000 figure as follows: 1991 Chevy S10 $2,000 (husband's lowest value) 1986 Corvette $4,000 ($14,000 — $10,000) 1965 Corvette, restored $17,000 ($9,000 + $8,000) 1965 Corvette, disassembled $9,000
Total $32,000
Given husband's testimony the two 1965 Corvettes were equal in equipment, and he and wife paid $9,000 for the vehicle they already restored, we find the magistrate had sufficient evidence upon which to value the unrestored vehicle at $9,000. Despite husband's assertion to the contrary, based upon our calculations, we find the magistrate did consider the $10,000 owed on the 1986 Corvette in calculating the total value of the vehicles. Having found the magistrate's total value for the vehicles awarded to husband was supported by sufficient evidence, we find the trial court did not err in sustaining the magistrate's decision relative to the property division. Husband first assignment of error as it relates to the issue of property division is overruled.
 II
In his second assignment of error, husband contends the trial court erred and abused its discretion in failing to equitably divide the parties' marital assets and debts pursuant to R.C. 3105.17.1. Pursuant to the trial court's July 13, 1999 Judgment Entry, wife was awarded the marital real estate, with a total value of $62,370.33 (appraised value of $76,000 less remaining mortgage of $13,629.67). The trial court found husband's marital interest in the real estate to be $28,000, some $3,185 less than 50% of the total value of the real property. The trial court did not make a finding of financial misconduct by husband. In awarding husband the vehicles discussed, supra, the trial court noted the value of these vehicles equaled or exceeded the monetary amount of $28,000. The cumulative value of the marital real estate and all of the vehicles is $98,370.33. Thus, each parties' share should have been $49,185.17. Pursuant to the trial court's judgment entry, wife was awarded marital property in the amount of $66,370.33, (real property and the Pontiac) while husband was awarded property in the amount of $32,000. We find the disparity in the value of the division of the marital property received by each party to be inequitable and an abuse of discretion. Husband's second assignment of error is sustained. This case is remanded to the trial court for redivision of the marital assets in accordance with this opinion and the law.
The judgment entry of the Tuscarawas County Court of Common Pleas is affirmed in part and reversed in part.
GWIN, P.J. and WISE, J. CONCUR.